## Del Valle & Co. *versus* Souder & Co.

1. In a charter-party, made in a foreign port, was this stipulation : " Captain P. guarantees that the cargo shall insure at as low a rate as in an A 2 vessel; any extra premium to be deducted from the freight." *Held*, that this did not bind the owners of the ship personally, but was a contract to receive so much less freight as would be equal to the extra premium paid.

2. A guaranty of a rate of insurance, with an express appointment of the mode of repaying any excess over the rate, is not an insurance of the cargo.

ERROR to the District Court of *Philadelphia*.

This was an action by Antonio Y. Del Valle and Jose M. Y. Del Valle, trading as Yznaga Del Valle & Co., against Edmund A. Souder and Archibald Getty, trading as E. A. Souder & Co.

The action was upon a charter-party made at Cardenas by F. T. Padelford, master of the brig Carolina, on behalf of her owners, the defendants, in which was the stipulation " that Captain Padelford guarantees that the cargo shall insure at as low a rate as in an A 2 vessel, any extra premium to be deducted from the freight." The cargo was a quantity of melado, consigned to the plaintiffs in New York. The vessel was not A 2, and the plaintiffs had to pay a higher rate of insurance than would have been charged for such vessel. The vessel and cargo were totally lost at sea. The plaintiffs sued the owners to recover the difference of the premium of insurance paid by them.

The jury found for the plaintiffs $835.96, the judge (Sharswood) reserving these points, viz. :—

1. Whether Captain Padelford had authority to bind his owners, the defendants.

2. Whether the guaranty extends beyond a deduction from the freight.

3. Whether there is any evidence of the value of the cargo.

The court afterwards entered judgment for the defendants, *non obstante veredicto*, Judge Sharswood delivering the following opinion :—

" There are some questions of evidence not now material, but the main question argued at the bar was, whether the master had power to bind his owners personally by such a contract. The power of the master to bind his owner in all that relates to the conduct of the ship is certainly, by the maritime law, very extensive, but it may be doubted whether it extends to authorize him to insure the cargo absolutely. We are all of the opinion, however, that upon a fair interpretation of this agreement, Captain Padelford did not mean to bind the defendants personally, but only to bind the freight, over which he undoubtedly had full power. Mercantile contracts of this character, especially when a written clause is introduced, are not drawn up with legal precision. They are entitled to receive a liberal construction. We must not stick too closely to the letter in such case. It is argued

[Del Valle v. Souder.]

that·here is an absolute guaranty, with a right to the freighters to hold back the amount in the payment of freight; but to the common understanding the last clause may well be taken as a qualification of the whole covenant. Any other construction makes Captain Padelford on behalf of his owners, without any premium in a certain event, insure the whole cargo. For upon the construction contended, suppose it had been shown that the brig was A 3, and in consequence could not be insured at all. When he·guaranteed that the vessel would insure at as low a rate as an A 2 vessel he guaranteed that she would insure, and he would have been liable on such an engagement, in case of loss, as if he had himself been the underwriter. Did Captain Padelford contemplate such an event—was it in the view of the parties ? We think not. No doubt, if the freight had been paid, the plaintiffs would recover back the difference of insurance ; they were not absolutely confined to deduction. So, if the plaintiffs had shown that defendants had received the amount of this freight from some underwriter with whom they had insured it. That would be money had and received to the plaintiffs' use. It is most probable that the plaintiffs, having a direct interest in the freight under this charter-party, would themselves have insured the freight, or their interest in it. In other words, we are of the opinion that the true intent and meaning of this contract, on the part of Captain Padelford, is to bind the freight, and the freight only, and not to bind his owners personally in any event."

The error assigned was entering judgment for the defendants.

_John T. Montgomery_, for plaintiffs in error.—The sole question is whether the covenant imposed a personal liability on the owners. The captain represents the owners, and can bind them by his contract in regard to freight: Abbott on Shipping 123–31. The covenant is a reasonable one, the offer to pay the extra premium being an inducement to ship the freight.

A covenant by a captain that the ship should sail under convoy, bound the owner: Runquist v. Ditchell, 3 Esp. 64, 2 Camp. 556, note Kenyon. In both cases, the safety of the cargo was the object of the shipper. The covenant should be construed most strongly against the covenantor: Western Ins. Co. v. Cropper, 8 Casey 355 ; Coster v. Phœnix Ins. Co., Cir. Ct. Penna., April 1807, cited in 3 Kent's Com. 260 ; 4 East 136, per Lord Ellenborough ; Franklin Ins. Co. v. Massey, 9 Casey 226. "Any extra premium to be deducted from the freight," is not an absolute undertaking that it alone should be liable ; for convenience it was primarily liable. If the owners are not liable, the shipper would have no security in case of the loss of the vessel. The liability of the captain is valueless ; the vessel is lost, and the freight not earned.

*J. E. Gowen*, for the defendants in error.—1. The contract of the captain was that if the vessel should not be insurable as of the class he represented, and a higher price had to be paid, the extra sum is to be deducted from the freight. This contract he could make. This was doubtless his intention, and that of the shippers too, for they would rather look for indemnity to the freight due from them at the end of the voyage, than seek it personally from the owners.

2. The captain is simply the agent of the owners, and the liability of his principals is limited by the nature of his employment. He has large powers, and, under the pressure of necessity, may pledge or sell the ship; but he cannot bind the owners personally: Grant *v.* Norway, 10 Com. Bench R. 687; Pope *v.* Nicholson, 3 Story's Rep. 475. To guarantee that the cargo should be insured at a certain rate, which is the undertaking contended for, is beyond his authority: French *v.* Backhouse, 5 Burrows 2727; Hooper *v.* Lusby, Camp. 66; Forster *v.* U. S. Ins. Co., 11 Pick. 88; Patterson *v.* Chalmers, 7 B. Munroe 595; General Interest Ins. Co. *v.* Ruggles, 12 Wheat. 412. In Runquist *v.* Ditchell, the publicity of the notice that the ship would sail with convoy, was deemed sufficient to charge the owner with being privy to its circulation.

The opinion of the court was delivered, February 5th 1866, by

WOODWARD, C. J.—The action is upon the following stipulation in the charter-party:—" Captain Padelford guarantees that the cargo shall insure at as low a rate as in an A 2 vessel, *any extra premium to be deducted from the freight.*"

We do not think it necessary to decide the question that was much mooted in the argument, whether the captain of a vessel lying in a foreign port so represents the owners that he may bind them by a contract of insurance in respect of the cargo, because we agree with the learned judge of the District Court that, upon a fair interpretation of the charter-party, Captain Padelford did not mean to bind the defendants personally, but only to bind the freight, over which he undoubtedly had full power. The contract was, that the cargo should insure at a rate not higher than if it were in an A 2 vessel, and if any excess over that rate had to be paid, it should be deducted from the freight. That is, Captain Padelford would receive so much less freight as should be equal to that excess. This, we think, was clearly the effect and meaning of the stipulation.

The cargo did not insure at the stipulated rate, and an extra premium had to be paid, which being deducted from the freight, the shippers have no claim upon the owners of the vessel. If it were admitted that a captain might bind the owners by a contract of insurance (a point we do not mean to affirm), a guaranty of a

[Del Valle v. Souder.]

rate of insurance with an express appointment of the mode of repaying any excess over that rate, cannot be treated as an insurance of the cargo. At most it is only a guaranty of the premium. If the owners, or the captain as their agent, kept the premium down to the specified standard, either by finding underwriters at that rate, or deducting the excess from the freight, the contract was performed and gone, and could not possibly ground an action for loss of cargo.

But it is said no freight was earned, and therefore no deduction was possible. Be it so; but this circumstance cannot alter the nature and scope of the contract. The owners are not liable for the cargo, because they would have been only entitled to a diminished freight. That would be a palpable *non sequitur*.

Nor can one contract be substituted for another, or the contract that was made expanded into an insurance, merely because the cargo was lost. The nature and extent of the contract are to be gathered from the terms employed to express it, rather than from the disastrous consequences that ensued from it.

On the whole, we see no ground for the errors assigned, and the judgment is affirmed.